UNITED STATES of America

v.

Armand L. HULLINGHORST and Samuel J. Terito.

Cr. A. No. 24848.

United States District Court
E. D. Louisiana, New Orleans Division.

May 9, 1956.

Prim B. Smith, Jr., U. S. Dist. Atty., New Orleans, La., for plaintiff.

Richard A. Dowling, New Orleans, La., for defendant.

BEN C. DAWKINS, Sr., District Judge.

The defendants in this case, Terito and Hullinghorst, were tried on an indictment consisting of thirteen counts,

charging violation of Section 874 of Title 18 U.S.C.A., referred to as the "kick back statute." Each count charged that defendants, while a contract for construction work was being performed, in which the Government of the United States had supplied funds in whole or in part were given "full and final authority" as to hiring and firing of persons seeking employment on the job, and did "knowingly, unlawfully and wilfully" require "as a condition of employment or continuation of employment", the persons named in the several counts to pay the sum of $1 for each day they worked of monies received by them as wages.

Terito was acquitted but Hullinghorst was convicted on all counts and now seeks a new trial on numerous alleged grounds (nine in the original and four in a Supplemental Motion) which are summarized as follows: (1) that the verdict was contrary to the law and evidence; (2) the conviction of Hullinghorst, while acquitting Terito, was "inconsistent with the evidence in the case"; (3) the court's refusal to allow defendant's counsel to discuss before the jury the "history and reasons for the passage" of the so called "kick back law"; (4 & 5) refusal to direct verdict of acquittal; (6) refusal to charge that the statute was never intended to cover union activities but applies solely to an employer or his agents who compel employees to pay back a portion of their wages; (7) the Court was further in error in giving a charge to Jury which was "tantamount to directing verdict of guilty"; (8) refusal to give requested charges 1, 2, and 3 by defendant's counsel and (9) the "allowance of evidence offered by the Government, objected to by defendant and noted in the record and excepted to" by defendant's counsel.

### Supplemental Motion Grounds

Ground: (1) reiteration of those in the original; (2) alleged newly discovered evidence; (3 & 4) arguments as to the benefits received by the persons alleged to have been employed and from whom the money was taken.

Of course Grounds Nos. 1, 4 and 5 involve the same contention, insufficiency of the evidence under the law to sustain the conviction and are disposed of by the Court's summary of evidence or facts proven. No. (2) the alleged inconsistency in the conviction of this defendant and acquittal of Terito, which is without merit, for the reason that one who is jointly charged as a principal, although an aider and abettor may be convicted alone. Section 2, Title 18 U.S. C.A. The test is, was the evidence, under the law applicable, sufficient to support the conviction of the one found guilty, and this point will also be disposed of in connection with Grounds Nos. 1, 4, and 5.

Nos. (1), (4) and (5): So far as the court has been advised the evidence has not been transcribed, but it feels its recollection of the material facts is sufficiently clear to enable it to pass upon all these points.

The facts: Both Terito and Hullinghorst were members of Local No. 53 International Association of Heat & Frost Insulators and Asbestos Workers.

Terito was the foreman on the job for the contractor, who gave him full power to "hire and fire" workers; while Hullinghorst was the business agent of the same union. The latter had the exclusive authority to issue permits to work and all persons, not members of the union, named in the indictment had to have permits to be allowed on the job. To obtain employment they had to agree to return those permits to Hullinghorst at the end of each week, with $1 per day for each day worked (the permits were issued for a week only at a time) or they would not be renewed. In a few instances, permits were not returned and no money was sent in, but such workers soon left the job. Generally speaking when they produced a permit, Terito allowed them to go to work, since apparently he had nothing further to worry about. He undoubtedly knew what was required to get a permit and, therefore, had no reason to exclude anyone with such a permit. As above stated all payments had to be

in cash which went into Hullinghorst's hands with the expired permits for the week at his office in the Godchaux Building in the City of New Orleans. They were checked and the funds disposed of under his direction. In a few instances checks were sent in but were returned by his direction, and the senders were informed that they had to send cash.

The Government does not deny that Terito had the power to "hire and fire" *on the job*, but contends the above powers of Hullinghorst were equally compelling and all applicants, not members of Local No. 53, knew they had to have a permit issued by Hullinghorst, to work on the job. Even if it be conceded he could not refuse to renew a permit for another week when the old was sent in with the money taken from the worker's earnings, the jury might well have concluded that his power to refuse the original or to refuse to issue a renewal, where the money was not paid, was as coercive as that of Terito to discharge. It might therefore have reasoned, since it was not proven that any of the money was paid into the latter's hands, he did not share in what was collected, as the price of employment, from these outsiders.

This summary of the facts as to the power of Hullinghorst and his participation in the selection or rejection of workers, not members of his own union, it would seem disposes of most of the grounds of both motions, not including No. 3 of the first, directed at the refusal of the court to allow counsel to argue the reasons for and meaning of the statute in question. Nos. 6, 7, and 8, are directed to the charges given and refused, which speak for themselves, and it is believed are also without merit. The same is true as to No. 9, dealing with the admission or exclusion of evidence.

No. 3. It is hardly necessary to cite authority in support of the court's refusal to permit counsel to interpret the law.

As to point No. 6 it is sufficient to say that the "kick back" statute does not except members of a union from its provisions, and in this instance this Union's Constitutional Article 13, Section 2 provides: "Permit workers shall not pay dues, assessments or other moneys, including donations, nor shall the Local Union or its officers or membership accept same." In view of these restrictions, the defendant had no authority to exact these payments for his union, regardless of any agreement between him and others as to what should be done with the money, but he did have the power to prevent employment, unless the daily payments of $1 were made, and the record shows this power was used. See United States v. Laudani, 320 U.S. 543, 64 S.Ct. 315, 88 L.Ed. 300. There was no evidence to question the current application of this provision of the constitution, but on the contrary an officer of the International Union testified it was in effect at the time the exactions were made. Hence it is believed that the rulings as to charges were correct.

No. 9 of the first motion is general in nature and points out no particular instance in which evidence was improperly allowed or denied. Any exception noted at the time will speak for itself.

### Supplemental Motion for New Trial

Ground No. (I) simply reiterates all of those of the first motion, and Nos. II, III and IV, dealing with alleged newly discovered evidence, in view of said Section 2 of Article 13 of the Union's Constitution, are irrelevant.

The motion is, therefore, denied.